This was a suit to recover damages for harboring a slave. It appeared in evidence that the said slave had belonged to the defendant Asael Farmer, and had been sold under execution in 1835, and purchased by the plaintiff; that he took the said slave into possession, and, immediately thereafter, he absconded and remained out until January, 1845. The witness, on examination, testified to various acts of harboring, from shortly after the said slave ran off until the fall of 1842, such as seeing him on the plantation of the defendants, at and about their house and outhouses — seeing caves and a shelter on their lands, and one near their house, having the appearance of being used as places of concealment by some one; and one witness testified that he had seen the slave at a camp on the land of the defendants, in company with the defendant William, while he was out, and the said William then spoke of him as a runaway. This suit was commenced on 15 September, 1846.
The counsel for the defendants moved the court to charge the jury that the statute of limitations barred the plaintiff's (203) right to recover damages for any harboring previous to 15 September, 1843; and that there was no evidence after that time to subject the defendants. The court declined so to charge, but told the jury that, though the statute did protect the defendants as to any harboring before 15 September, 1843, yet they might look to the antecedent acts of the defendants, and if they believed from them that the harboring was continued after 15 September, 1843, the plaintiff would be entitled to recover for the loss of the services of the said slave after that time.
The jury returned a verdict for the plaintiff. The defendants moved for a new trial because of misdirection, which was refused, and they appealed.
The only question presented is as to the charge upon the statute of limitations. We think the defendants were entitled to the instructions they asked, and that his Honor erred in refusing them. In proportion to the atrocity of conduct imputed to any one ought to be the care with which we should guard ourselves against the feelings it naturally excited. The crime imputed to the defendants — for it is a criminal act; punishable by indictment — is little less than that of stealing, and only less because the law does not make it a felony. The slave had been sold to pay the debts of the defendants, and for seven years the plaintiff had been by them fraudulently deprived *Page 151 
of his services. The feelings naturally excited by such conduct should not be permitted to obscure our judgment. Criminal as the defendants certainly were, and deserving of all the punishment which the law affixed to their actions, they are still entitled to the protection which the law throws around their persons. The statute, which makes the harboring of a (204) slave an indictable offense, also gives to the owner an action for the damages he may have sustained. The time within which such action shall be brought is regulated by the general statute of limitations. By it it is enacted that actions upon the case must be brought within "three years next after the cause of such action or suit occurred, and not after." Every act of harboring a slave is a fresh cause of action, but an action when brought covers all such acts for three years next before the bringing of the suit, for the law does not countenance the splitting up of actions. In this case the writ issued on 15 September, 1846, and embraced all the time between that period and 15 September, 1843, and could not, by force of the statute, extend any further back. This was the opinion of the presiding judge, and he so charged, but he proceeded "that they might look to the antecedent acts of the defendants, and if from them they believed that the harboring continued after 15 September, 1843, the plaintiff would be entitled to recover for the loss of the services of the slave after that time." This was stating to them that the acts of harboring, down to the fall of 1842, were evidence of a harboring after 15 September, 1843. In this opinion we do not concur. It is, in effect, holding that the defendants, having been fixed with acts of harboring at any time before the action was brought, were to be considered as still harboring, not only down to the time when the statute of limitations would begin to run, but to the bringing of the action. Such a construction would virtually repeal the statute in every case where there was more than one act of harboring. Nor can we see why, if correct, it should not have that effect in every case. A dozen acts of harboring in 1842 is no more evidence of a harboring after 15 September, 1843, than would be one such. If, in measuring the time which the statute covers, we pass 15 September, 1843, where shall we stop — in 1842, 1841, 1840, (205) or where else? It is impossible that a transgression of the law, in either of those years, can be evidence of such transgression in 1843. A., in 1842, steals the negro of B., who regains the possession of him; in 1843 it is alleged he stole the slave again. Could it be pretended that, on an indictment for the latter offense, the first taking could be given in evidence to convict? Again, in an action for usury, evidence of other *Page 152 
usurious contracts of the defendant, either with the same or another person, would not be evidence. 7 East., 108; Spencelyv. Willott. The general replication in this case to the plea of the statute is, that within three years next before the bringing of the action the defendants did harbor the slave. Is the replication supported by evidence that he harbored him four years before the action was brought? In an action of fraud in the sale of personal property, if the defendant plead the statute of limitations, it is no sufficient replication that, within three years next before the bringing of the action, the defendant acknowledged the fraud. Oathout v. Thompson, 20 John., 277. That was an action of tort for fraud in the sale of a slave; this is an action for a tort in harboring a slave. In the former the confession referred to the time of the sale, when the fraud was committed, which was not within the time limited by law for bringing such actions. If, in this case, the defendants had confessed, after 15 September, 1843, that they had harbored the slave previous to September, 1842, it would, according to the case cited above, be no evidence to bring the case within the statute. Much less could the fact of harboring, previous to the fall of 1842, be any evidence of a harboring after 15 September, 1843, more than a year thereafter. The plaintiff, by his replication, undertook to show that the defendants had committed the offense within the three years next before the bringing of the (206) action; and he must prove an act of harboring within that time, either by positive evidence or by proof of such circumstances occurring within that time as could justify a jury in so finding. It may be that the law ought not to shield from punishment the perpetrators of such offenses. Yet it has been the pleasure of the Legislature to limit to two years the prosecution of all misdemeanors, with a few exceptions. If this, instead of being a civil suit, were a criminal prosecution for this offense, would the proof of an act of harboring in the fall of 1842 support an indictment commenced in 1845; or would it be correct to refer the jury to the act in 1842 as justifying a conclusion by them that the offense had been perpetrated within two years next before the preferring of the indictment? It is true, these are certain facts which are of such a nature that the law presumes their continued existence until it is shown that they do not exist. Thus a man who is shown to be in life at a certain time is presumed to be still in life until it is shown that he is not in life, either by proving his death or such a lapse of time, since he was last heard of, as raises a counteracting presumption of death. So, also, sanity, when established previous to doing a particular act, is presumed to continue at the time *Page 153 
the act is done, until the contrary is proved. But harboring a slave is not a continuous act, and no presumption arises, from the proof of one such act, that another, at a subsequent time, has taken place. If the slave had been seen on or near the premises of the defendants after 15 September, 1843, the acts of harboring previous thereto would be evidence, not to increase the damages, but to show the nature of the act of being at the place at that time.